**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | | |
|---|---|---|
| ANTHONY B. SCHWENDINGER, CRNA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MERCY MEDICAL CENTER-CLINTON, | ) | |
| INC., a Delaware Corporation; MEDICAL | ) | |
| ASSOCIATES OF CLINTON IOWA, PLC, | ) | **JURY TRIAL DEMANDED** |
| an Iowa Company; GATEWAY | ) | |
| SURGERY CENTER, LC, an Iowa | ) | |
| Company; MORRISON COMMUNITY | ) | |
| HOSPITAL, an Illinois Corporation; | ) | |
| MARK LEDING, DO; STEPHEN | ) | |
| JEWELL, CRNA; and JAMES | ) | |
| BABESHOFF, CRNA, | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT**

NOW COMES Plaintiff, Anthony B. Schwendinger, CRNA ("Plaintiff" or "Schwendinger") by and through his attorneys, Gaido & Fintzen, and for his Complaint against the Defendants, alleges as follows:

**THE PARTIES**

1.      Schwendinger is an individual who resides in Clinton, Clinton County, Iowa.  Schwendinger is a certified registered nurse anesthetist ("CRNA").

2.      At all times relevant hereto, Defendant, Mercy Medical Center-Clinton, Inc. ("Mercy"), was and is a non-profit corporation incorporated in Delaware, and registered to do business in Iowa.  Mercy operates out of and maintains a registered office in Clinton, Iowa.  It is a full-service health system serving residents in Clinton,

Iowa and surrounding communities in eastern Iowa and northwestern Illinois.  On its website, Mercy describes itself as "the area's largest employer [with a] staff of nearly 1,000 employees" and "a major provider of health services" for the residents of the bi-state area.

3.      At all times relevant hereto, Defendant, Medical Associates of Clinton Iowa, PLC ("Medical Associates"), was and is an Iowa professional limited liability company that operates out of and maintains its registered office in Clinton, Iowa.  Medical Associates is a 40-doctor multi-specialty group located on the Iowa-Illinois border and a self-described "leading provider in the Gateway area for the past 40 years."  Upon information and belief, the Gateway area includes Clinton County, Iowa and Whiteside County, Illinois.

4.      At all times relevant hereto, Defendant, Gateway Surgery Center, LC ("Gateway"), was and is an Iowa limited liability company that operates out of and maintains its registered office in Clinton, Iowa.  Gateway is an outpatient surgery center serving patients in the Clinton area.  Upon information and belief, Medical Associates is the corporate owner of Gateway.

5.      At all times relevant hereto, Defendant, Morrison Community Hospital ("Morrison"), is an Illinois not-for-profit corporation located in Morrison, Illinois.  Morrison provides medical, surgical, radiology, laboratory, inpatient pharmacy and emergency services to its immediate community and surrounding areas.   Upon information and belief, Morrison entered into a formal contractual agreement with Mercy for Mercy to provide management services to its facility.

6.      Defendant, Mark Leding, DO ("Leding"), is an individual who, upon information and belief, resides in Clinton, Iowa.  Leding is a Doctor of Osteopathic Medicine specializing in anesthesiology.

7.      Defendant, Stephen Jewell, CRNA ("Jewell"), is an individual who, upon information and belief, resides in Dubuque, Iowa.

8.      Defendant, James Babeshoff, CRNA ("Babeshoff"), is an individual who, upon information and belief, resides in Delmar, Iowa.

## NATURE OF CLAIMS

9.      Defendants are competitors in the same services and geographic markets that either separately and/or jointly colluded and conspired to improperly preclude ("blackball") Schwendinger, and others, from seeing patients at Mercy, Gateway, Morrison (collectively "Facilities") and/or other medical facilities in the Clinton, Iowa and Morrison, Illinois areas.

10.     Defendants' conduct harmed patients by reducing the number of qualified CRNAs and thus reducing competition in the provision of anesthesia services in the Clinton – Morrison area.

11.     Defendants also either separately and/or jointly: (i) tortiously interfered with Schwendinger's employment contract; (ii) tortiously interfered with Schwendinger's prospective business opportunities; (iii) defamed and slandered Schwendinger; (iv) acted fraudulently to improperly preclude Schwendinger from providing anesthesia services at the Facilities and other medical facilities; and (v) failed

to comply with the applicable bylaws, contracts, policies, procedures, and other governing documents regarding Schwendinger.

12.     As a result of Defendants' collective conduct, Schwendinger suffered, and continues to suffer, substantial damages for which Defendants are liable.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1337 because this action arose under federal antitrust law, Section 4 of the Sherman Act, 15 U.S.C. §4, and this Court also has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. §1367.

14.     Defendants are engaged in, and their activities substantially affect, the operation of interstate commerce because: (i) Defendants are engaged in contractual relationships with each other across the Iowa-Illinois state line; and (ii) Defendants entered into service contracts with interstate companies.  Upon information and belief, Defendants also provide anesthesia services to each other across state lines.

15.     Venue is proper in this District pursuant to 15 U.S.C. §22, and 28 U.S.C. §1391, because (i) Defendants transact business in this District; (ii) Mercy, Medical Associates, Gateway, Leding, and Babeshoff are either located or reside in this District; and (iii) a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

16.     Schwendinger was hired by Pain Consultants, P.C. ("PC") during or about February 2005.  At all times relevant hereto, Schwendinger was employed by PC to provide anesthesia services at the Facilities and other locations with which PC has or

had contracts to provide anesthesia services.  Schwendinger's income was based on the anesthesia services he provided at the Facilities.

17.     Dr. John Dooley ("Dooley") is PC's owner and President.  PC is an Iowa professional company that operates out of and maintains its registered office in Bettendorf, Iowa.

18.     While working for PC, Schwendinger was assigned to provide anesthesia services at the Facilities.  During all relevant times, Schwendinger was among a limited group of anesthesia providers who provided services to the Facilities on behalf of PC, which group included Leding, Babeshoff, and Jewell.  Among the group of anesthesia providers, Schwendinger had been with PC the longest, and was considered by Dr. Dooley to be his most loyal and dedicated service provider.

19.     Mercy and Gateway are located in Clinton, Iowa, which has a population of approximately 26,830.  Morrison, Illinois has a population of 4,181.

20.     PC has or had exclusive contracts to provide anesthesia services to the Facilities, copies of which are attached hereto as Exhibits A, B and C.  Specific provisions of those contracts indicated the Facilities would not exercise control or direction over the manner or method by which PC performed its anesthesia services, including work assignments, work locations and personnel.  Without limiting the foregoing, pursuant its exclusive contracts with the Facilities, PC determined in its sole discretion whether Schwendinger and/or another PC employee would provide the contracted anesthesia services at the Facilities, and the Facilities were precluded from interfering with said decision.  *See Exhibit A, Mercy Contract, Sections 2, 8.2, 9, and 10;*

*Exhibit B, Gateway Contract, Sections 1, and 8.1; and Exhibit C, Morrison Contract at Sections 1, 7(b), and 12.1.* In addition, the respective contracts identify the required qualifications for Anesthesiology/CRNA providers, all of which Schwendinger met at all times relevant hereto. *Exhibit A at Section 7; Exhibit B at Section 7(b); and Exhibit C at Section 3.4(b).*

21.    At all times relevant to this matter, Schwendinger worked efficiently, and without incident, at the Facilities. More specifically, while providing services at the Facilities, Schwendinger was: (i) never made a party to a medical malpractice claim, insurance claim, or other claim arising out of his patient care; (ii) neither subject to the Facilities' privileges review process, nor subject to any disciplinary proceeding; (iii) never notified of or otherwise subject to any complaint, proceeding, or programs in accordance with the Facilities' policies regarding alcohol and/or substance abuse; and (iv) never notified by the Facilities in writing regarding any concerns or complaints surrounding his patient care or other services.

22.    At all times relevant hereto, Schwendinger's anesthesia and patient care services at the Facilities met or exceeded the standard of care.

23.    Leding is an anesthesiologist who at times relevant hereto worked for PC as an independent contractor.

24.    Upon information and belief, during the past ten years, Leding was disciplined by the Iowa Board of Medicine on multiple occasions, charged with, among other things, professional incompetency and knowingly making misleading, deceptive,

untrue, or fraudulent representations in the practice of medicine, and was placed on probation from 2002 to 2007.

25.     Upon information and belief, in or around February 2008, prior to his employment with PC, Leding sought employment from Mercy, but Mercy refused to hire him.  Leding subsequently applied to, and was hired by, PC in or around June 2008.

26.     Upon information and belief, pursuant to Leding's contract with PC, Leding was precluded from providing anesthesia services at the Facilities, or elsewhere in the area, unless it was through PC and in accordance with said contract.

27.     Upon information and belief, at all times relevant hereto, Leding sought to be released from his contract with PC and work directly for Mercy, and no longer be subject to the restrictive covenants contained in his contract with PC.

28.     From April 2004 through September 2011, Dr. Dooley served as the Medical Director at Mercy, and from April 2011 through September 2012 he served as the Head of the Anesthesia Department at Mercy.  Upon information and belief, at all times relevant hereto, Leding sought to replace Dr. Dooley as the director of anesthesia at Mercy.

29.     Upon information and belief, at all times relevant hereto, Leding viewed Schwendinger as a competitor to whom he lost substantial business and business opportunities, and an obstacle to Leding's goals of: (i) separating from PC; (ii) being released from his restrictive covenant with PC; (iii) being employed by and becoming the director of anesthesia at Mercy; and (iv) reducing his competition at Mercy and in

the surrounding area.  Leding pursued the conduct described in this Complaint in order to accomplish these goals, and eliminate Schwendinger as his competitor by putting him out of business in the area.

30.     During all times relevant hereto, Leding harassed, defamed, discredited, criticized, and otherwise damaged Schwendinger.  Specifically, among other conduct, Leding: (i) made false statements about Schwendinger's abilities and professional services to Dr. Dooley, and physicians, nurses, and other health care providers and personnel associated with the Facilities (collectively "Third Parties"); (ii) made false statements to Third Parties regarding Schwendinger's history of alcoholism; (iii) made false statements to Third Parties regarding Schwendinger's current health condition, and falsely suggested Schwendinger had "fallen off the wagon" and was impaired while providing patient care; (iv) made false statements regarding Schwendinger's specific care of certain patients, and Leding's care in connection with said patients; and (v) repeatedly and unjustly antagonized, criticized, and otherwise harassed Schwendinger directly and through communications with Third Parties.

31.     Schwendinger reported Leding's harassing and bullying behavior to Mercy on no less than three occasions, and, to Schwendinger's knowledge, Mercy did nothing to address and/or resolve the issue, despite maintaining a specific policy and procedure regarding such reports.

32.     During all times relevant hereto, Defendant Babeshoff was employed by PC pursuant to a written employment contract. Upon information and belief, pursuant to Babeshoff's employment contract with PC, Babeshoff was precluded from providing

anesthesia services at the Facilities other than through PC and in accordance with said contract.

33.     At all relevant times hereto, Babeshoff viewed Schwendinger as a competitor, and an obstacle to his goals of: (i) separating from PC; (ii) being released from his restrictive covenants with PC; and (iii) reducing his competition at Mercy and in the surrounding area.  Babeshoff pursued the conduct described in this Complaint in order to accomplish these goals.

34.     During all times relevant hereto, Babeshoff, among other conduct: (i) made false statements about Schwendinger's abilities and professional services to the Third Parties; (ii) made false statements to Third Parties regarding Schwendinger's history with alcoholism; (iii) made false statements regarding Schwendinger's current health condition, and falsely suggested Schwendinger was impaired while providing patient care; (iv) made false statements regarding Schwendinger's specific care of certain patients; and (v) repeatedly and unjustly antagonized, criticized, and otherwise harassed Schwendinger directly and/or through communications with Third Parties.

35.     During all times relevant hereto, Defendant Jewell was employed by PC pursuant to a written employment contract.  Upon information and belief, pursuant to Jewell's employment contract with PC, Jewell was precluded from providing anesthesia services at the Facilities other than through PC and in accordance with said contract.

36.     At all relevant times hereto, Jewell viewed Schwendinger as a competitor, and an obstacle to his goals of: (i) separating from PC; (ii) being released from his restrictive covenants with PC; and (iii) reducing his competition at Mercy and in the

surrounding area. Jewell pursued the conduct described in this Complaint in order to accomplish these goals.

37.    During all times relevant hereto, Jewell, among other conduct: (i) made false statements about Schwendinger's abilities and professional services to the Third Parties; (ii) made false statements to Third Parties regarding Schwendinger's history with alcoholism; (iii) made false statements regarding Schwendinger's current health condition, and falsely suggested Schwendinger was impaired while providing patient care; (iv) made false statements regarding Schwendinger's specific care of certain patients; and (v) repeatedly and unjustly antagonized, criticized, and otherwise harassed Schwendinger directly and/or through communications with Third Parties.

38.    On or about February 15, 2012, Dr. Dooley received a call from Leding. Upon information and belief, at that time Leding made false statements about Schwendinger regarding improper patient care, and being under the influence of alcohol at Mercy.

39.    On or about February 16, 2012, Dr. Dooley spoke with various Mercy representatives regarding Leding's accusations, and confirmed with Schwendinger that he did not receive any written communication from Mercy regarding his clinical privileges being suspended or revoked. Accordingly, Dr. Dooley directed Schwendinger to report to work at Mercy on February 17, 2012 as previously scheduled.

40.    When Schwendinger arrived at Mercy on the morning of February 17, 2012, he found that Leding, who made the anesthesiology schedule, did not include Schwendinger in any anesthesia case that day.

41.     Later that day, Dr. Dooley received a call from Mercy President/CEO, Sean Williams, expressing concerns about Schwendinger's patient care.  Based on his experience with Schwendinger, and the circumstances surrounding the call, Dr. Dooley doubted the validity of the reports, and urged that Mercy conduct an official investigation to determine the facts surrounding the allegations against Schwendinger. Mr. Williams rejected Dr. Dooley's request and, instead, appointed an ad hoc group, including Leding, Carla Tarrant ("Carla"), Amy Bernetes, Dr. Surendra Kumar, Dr. James Olney, and Dr. Dooley ("Consulting Group") to consult with him regarding the false allegations against Schwendinger.

42.     On February 17, 2012, Dr. Dooley notified Schwendinger that his access to Mercy had been blocked pending the results of the informal investigation.   The Consulting Group initially appeared to be focused on three patients who received care from Schwendinger ("Three Cases"); two of which were also treated by Leding. Although a review of the cases revealed no deviation from the standard of care by Schwendinger, upon information and belief, it was Leding's care/decisions that placed patients at risk; something Leding attempted to conceal.

43.     On March 5, 2012, Schwendinger participated in a meeting with Dr. Kumar, Linda Hoppe (Mercy Director of Risk Management), and Dr. Dooley to discuss the events of the previous month, and the reasons Mercy removed him from active practice.   Following the meeting, Dr. Dooley told Schwendinger he anticipated he would be back to work at Mercy by the end of the week because there was no evidence of improper patient care.

44.     On March 9, 2012, Dr. Dooley met with Mr. Williams, Dr. Kumar, Dr. Olney, Carla Tarrant, and Amy Bernetes to discuss the outcome of the informal investigation, and the recommendations of the Consulting Group.   According to Dr. Dooley, it was evident the other members of the Consulting Group were no longer focused on the Three Cases, but, instead, discussing and considering allegations of Schwendinger's purported alcoholism.   At that meeting, Dr. Dooley expressed his opinion that Schwendinger was not impaired.   Mr. Williams disagreed, and informed Dr. Dooley that Mercy decided it would no longer compensate PC for Schwendinger's services. Mr. Williams verbally directed Dr. Dooley not to assign Schwendinger to work at Mercy, and informed him that Schwendinger was precluded from seeing patients at Mercy.

45.     Shortly thereafter, Dr. Dooley received a call from Marsha Croger, Director of Nurses at Morrison, who informed Dr. Dooley that Schwendinger could no longer work at Morrison due to his problems at Mercy, and Morrison was transferring its anesthesia cases to Mercy. Dr. Dooley inquired as to whether Morrison had any problems with Schwendinger's services, and Ms. Croger confirmed there were no complaints against Schwendinger.   Ms. Croger indicated that Kent Jorgensen (Morrison's CEO), who is employed by Mercy, directed that Dr. Dooley not assign Schwendinger to work at Morrison, and informed him that Schwendinger was precluded from seeing patients at Morrison.

46.     Later that same day, Ms. Croger contacted Dr. Dooley to apologize for her earlier communication, and asked if Schwendinger was able to work at Morrison for

three upcoming surgery days. Accordingly, Schwendinger performed anesthesia services at Morrison on March 14th, 19th, and 23rd, 2012.

47.   Shortly thereafter, Dr. Dooley received a call from Kent Jorgensen, who informed Dr. Dooley that Morrison would no longer compensate PC for Schwendinger's services, directed Dr. Dooley not to assign Schwendinger to work at Morrison, and informed him that Schwendinger was precluded from seeing patients at Morrison.   Dr. Dooley objected, and cautioned Mr. Jorgensen that his actions were contrary to Morrison's bylaws and its contract with PC, but Mr. Jorgensen dismissed Dr. Dooley's objections.

48.   During or about that same time, Dr. Dooley received a call from Robin Kroymann (Manager at Gateway), who informed Dr. Dooley that Gateway did not want Schwendinger providing services at its surgery center.   Dr. Dooley asked whether Gateway had any specific problems with Schwendinger's services, and Ms. Kroymann confirmed there were no complaints about him.

49.   Shortly thereafter, Dr. James Olney, Gateway's President and Mercy's Surgery Department Chair, directed Dr. Dooley not to assign Schwendinger to work at Gateway, and informed him that Schwendinger was precluded from seeing patients at Gateway.

50.   By March 31, 2012, the Facilities had all directed PC not to assign Schwendinger to their Facilities, and precluded Schwendinger from seeing patients at the Facilities.

51.   Pursuant to the bylaws and other governing documents adopted by the Facilities, any action taken with respect to Schwendinger and/or his privileges required the Facilities to follow specific procedures and afford Schwendinger certain due process rights which, among other things, granted him an opportunity to notice of the claims against him and a right to respond in writing, via hearing, and/or other proceeding.

52.   Contrary to the foregoing, the Facilities, without providing the required notifications to Schwendinger, and/or affording Schwendinger the rights to which he is entitled under the Facilities' governing documents and the law, precluded Schwendinger's access to the Facilities, and interfered with his contractual and prospective business relationships by directing PC not to assign him to the Facilities.

53.   As set forth above, pursuant to PC's contracts with the Facilities, it was PC's right and responsibility to make all staffing decisions, and the Facilities were specifically precluded from doing so and/or interfering with PC's staffing decisions.

54.   Each of the Facilities breached their respective contracts with PC by directing PC not to assign Schwendinger to provide services at their Facilities, and precluding Schwendinger from seeing patients at their Facilities.

55.   All Defendants were aware of the employment contract between PC and Schwendinger, and that Schwendinger was among a limited group of employees providing services to the Facilities on behalf of PC.

56.   Pursuant to the Facilities' exclusive contracts with PC, the Facilities were precluded from retaining anesthesia services other than through PC, so long as PC fulfilled its obligations under said contracts.   In the event PC could not provide

14

adequate anesthesia services at a Facility, it could lose its exclusive contract with said Facility.  In this regard, PC could be considered in breach of its exclusive contracts if it: (i) did not have an adequate number of anesthesiologists or CRNAs to cover a Facility's needs; or (ii) assigned anesthesia providers who failed to properly perform the services at the Facility.

57.    Schwendinger was among a limited group of anesthesia providers who provided services to the Facilities on behalf of PC, which group included Leding, Babeshoff, and Jewell.  Among the group of anesthesia providers, Schwendinger had been with PC the longest, and was considered by Dr. Dooley to be his most loyal and dedicated service provider.  Because Dr. Dooley was often not present at the Facilities, Schwendinger regularly reported to Dr. Dooley regarding the anesthesia activities at the Facilities, and his view of how PC service providers were conducting themselves and being perceived by and at the Facilities.

58.    Upon information and belief, the Facilities sought to terminate their exclusive contracts with PC, and have the option to retain anesthesia services directly, and other than from PC.  Upon information and belief, in furtherance of the Facilities' desire to terminate the exclusive contracts with PC, the Facilities precluded Schwendinger from seeing patients at the Facilities.

59.    There was no legal or factual basis to support the Facilities' decisions and actions against Schwendinger. Moreover, the Facilities, Leding, Babeshoff, Jewell, and other individuals, stood to benefit economically by precluding Schwendinger from providing services at the Facilities, and otherwise raising issues with PC's services.

60.     Upon information and belief, the Facilities, Leding, Babeshoff, Jewell, and other individuals, pursued a course of conduct designed and intended to: (i) preclude Schwendinger from providing anesthesia services at the Facilities; (ii) secure Leding's appointment as the director of anesthesia at Mercy; (iii) force PC to terminate its exclusive contracts with the Facilities; and (iv) force PC to release Leding, Babeshoff, and Jewell from their contracts with PC.   In addition, the Facilities had an understanding and/or agreement that they would "blackball" or otherwise deny employment to those who had either been fired or rejected for employment by any of the Facilities.

61.     During or around August 2012, PC entered into an agreement with Mercy, pursuant to which, among other things: (i) the Mercy Contract was terminated; (ii) Leding, Babeshoff, and Jewell were permitted to practice at Mercy irrespective of their agreements with PC; and (iii) PC agreed to terminate its agreements with Leding, Babeshoff, and Jewell as of a date certain.

62.     Upon information and belief, Leding, Babeshoff, and Jewell are employed by Mercy as of the date of this Complaint, and Leding serves as Mercy's director of anesthesiology.

63.     After Schwendinger was precluded from the Facilities, he applied for employment at a number of other local or non-local medical facilities, but, upon information and belief, was refused consideration as a result of false, incomplete, and/or otherwise improper responses provided by Mercy and Leding to said facilities' inquiries.

64.     In or around October 2012, Schwendinger applied for employment at a medical facility in North Iowa, Mercy Mason City, but was forced to voluntarily withdraw his application when Mercy refused to fully complete a reference request form. Based on conversations with the facility, upon information and belief Schwendinger understood that the facility would deny his request for privileges and report said denial to the National Practitioner Data Bank unless: (i) Mercy submitted a complete response on the requesting facility's form; or (ii) Schwendinger withdrew his request for privileges.

65.     Upon information and belief, Mercy and Leding have either refused to respond to similar requests from facilities reviewing Schwendinger's applications, or provided false information about Schwendinger, that blocked his efforts to obtain employment and/or privileges.

66.     Despite diligent efforts to secure employment since being precluded from seeing patients at the Facilities, as a result of the Defendants' conduct, Schwendinger has been unable to secure employment to provide CRNA services.

## CLAIMS FOR RELIEF

### COUNT I
### Exclusionary Agreements in Violation of Section 1 of the Sherman Act

67.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

68.     Defendants' understanding and/or agreement that they would "blackball" or otherwise deny employment to those who had either been fired or rejected for employment by another competitor unreasonably restricts competition and

thus violates Section 1 of the Sherman Act, 15 U.S.C. §1.  The purpose and effect of these understandings and/or agreements by Defendants are to restrain trade and competition in the Clinton – Morrison market for anesthesia services.  These agreements are per se violations of Section 1 of the Sherman Act, 15 U.S.C. §1.

69.   The Defendants' exclusionary practices caused harm to the public by reducing the number of qualified CRNAs and thus reducing competition in the provision of anesthesia services in the Clinton – Morrison area.   The Defendants' foregoing exclusionary practices deprived Schwendinger of the opportunity to practice the profession he chose and for which he was, and is, trained and qualified.

70.   As a result of Defendants' conduct, Schwendinger lost substantial employment income for which Defendants are liable.   As a result of Defendants' conduct, Schwendinger is entitled to actual and treble damages under §4 of the Clayton Act, 15 U.S.C. §15(a).

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff:

(a)   Actual damages for lost past and future earnings in an amount to be proven at trial;

(b)   Treble damages  pursuant to §4 of the Clayton Act, 15 U.S.C. §15(a);

(c)   Costs of suit and attorneys' fees under §4 of the Clayton Act, 15 U.S.C. §15 (a);

(d)   Prejudgment interest on actual damages under 15 U.S.C. §15(a);

(e)   Injunctive relief under 15 U.S.C. §26, whereby Plaintiff demands that the Facilities cease and desist interfering with Schwendinger's business and employment opportunities, and respond timely and honestly to all information requests regarding Schwendinger's employment and privileges at the Facilities; and

(f)     Grant such other relief as the Court may deem just and appropriate.

## COUNT II
### Monopolization in Violation of Section 2 of the Sherman Act

71.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

72.     Defendants possess a virtual monopoly over the provision of anesthesia services in the Clinton - Morrison area.   Through their anticompetitive conduct, Defendants willfully maintained that power, and, unless restrained by this Court, will continue to willfully maintain the same by anticompetitive and unreasonably exclusionary conduct.   Defendants acted with an intent to illegally monopolize the anesthesia services market, and its illegal conduct enabled it to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

73.     Defendants' exclusionary practices harmed the public by reducing the number of qualified CRNAs and thus reduced competition in the provision of anesthesia services in the Clinton – Morrison area. The Defendants' foregoing exclusionary practices deprived Schwendinger of the opportunity to practice the profession he chose and for which he was, and is, trained and qualified.

74.     As a result of Defendants' conduct, Schwendinger lost substantial employment income for which Defendants are liable, As a result of Defendants' conduct, Schwendinger is entitled to actual and treble damages under §4 of the Clayton Act, 15 U.S.C. §15(a).

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff:

(a)     Actual damages for lost past and future earnings in an amount to be proven at trial;

(b)     Treble damages pursuant to §4 of the Clayton Act, 15 U.S.C. §15(a);

(c)     Costs of suit and attorneys' fees under §4 of the Clayton Act, 15 U.S.C. §15 (a);

(d)     Prejudgment interest on actual damages under 15 U.S.C. §15(a);

(e)     Injunctive relief under 15 U.S.C. §26, whereby Plaintiff demands that the Facilities cease and desist interfering with Schwendinger's business and employment opportunities, and respond timely and honestly to all information requests regarding Schwendinger's employment and privileges at the Facilities; and

(f)     Grant such other relief as the Court may deem just and appropriate.

## COUNT III
## Violation of Iowa Competition Law

75.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66, as if fully set forth herein.

76.     Based on foregoing anticompetitive conduct of the Defendants, the Defendants' actions were designed to reduce competition from Schwendinger and PC, and create a monopoly regarding anesthesia services in favor of Leding, Babeshoff, and Jewell in the Clinton - Morrison area. Defendants' agreements to restrain trade and competition in the anesthesia market violates Iowa Code §553.4. Further, Defendants' intended to illegally monopolize the anesthesia services market, in violation of Iowa Code §553.5.

77.     As a result of Defendants' conduct, Schwendinger lost substantial employment income for which Defendants are liable.   As a result of Defendants'

conduct, Schwendinger is entitled to exemplary damages under Iowa Code §553.12, not exceeding twice the actual damages awarded.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff:

(a)   Actual damages for lost past and future earnings in an amount to be proven at trial;

(b)   Exemplary damages pursuant to Iowa Code §553.12;

(c)   Costs of suit and attorneys' fees under Iowa Code §553.12;

(d)   Injunctive relief under Iowa Code §553.12, whereby Plaintiff demands that the Facilities cease and desist interfering with Schwendinger's business and employment opportunities, and respond timely and honestly to all information requests regarding Schwendinger's employment and privileges at the Facilities; and

(e)   Grant such other relief as the Court may deem just and appropriate.

## COUNT IV
### Civil Conspiracy to Harm Plaintiff

78.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

79.   Defendants conspired to enter into an agreement and/or understanding to undertake conduct resulting in harm to Schwendinger.   Through their false statements, interference with contractual relations, and anticompetitive conduct, the Defendants deprived Schwendinger of the opportunity to practice anesthesia in the Clinton-Morrison area.   This was not done because of Schwendinger's qualifications, but rather because of an express or tacit understanding or agreement among the Facilities in the area that they would not "pirate" the others and would deny

employment to those who had either been fired or rejected for employment from the other Facilities.

80. For their part, Leding, Babeshoff, and Jewell formulated a plan to defame, harass, and bully Schwendinger by, among other things, falsely (and with no supporting evidence) accusing Schwendinger of improper patient care, sleeping during procedures, and being under the influence of alcohol while working, solely to: (i) preclude Schwendinger from being able to provide CRNA services at the Facilities; (ii) lead to Leding being appointed as the director of anesthesia at Mercy; (iii) force PC to terminate its exclusive contracts with the Facilities; and (iv) force PC to release Leding, Babeshoff, and Jewell from their contracts with PC, allowing them to fill PC's vacancy and decreasing competition at Mercy and in the surrounding area.

81. Schwendinger has been damaged by the foregoing agreements and conspiracy because despite diligently seeking employment from various potential employers since being precluded from the Facilities, he has been unable to secure steady work. The plans, plots, and schemes of Leding, Babeshoff, and Jewell to remove Schwendinger from his practice at the Facilities in order to eliminate him as competition, facilitate a separation from PC, and obtain a release from their restrictive covenants with PC, was a success; as all are currently working at Mercy, and Leding is currently the director of anesthesia at Mercy.

82. Schwendinger has suffered substantial damages, including loss of past and future earnings, as a result of Defendants' conspiracy for which Defendants are liable.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff compensatory damages for lost compensation and future earnings in an amount to be proven at trial, and grant such other relief as the Court may deem just and appropriate.

## COUNT V
### Tortious Interference with a Contract Against All Defendants

83.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

84.     Defendants were aware that Schwendinger was a party to a valid and enforceable contract with PC, and that his income was based on the anesthesia services he provided at the Facilities.  Defendants intentionally and maliciously interfered with Schwendinger's contract and business relationship with PC by making defamatory and slanderous statements to Dr. Dooley, physicians, nurses, and other health care providers and personnel associated with the Facilities.  As a result of Defendants' conduct, Schwendinger was improperly precluded from seeing patients at the Facilities and PC was directed not to assign Schwendinger to fulfill PC's obligations under its contracts with the Facilities.

85.     Defendants' tortious conduct precluded Schwendinger from providing the majority of available services pursuant to his contract with PC, ultimately forcing PC to terminate its contract with Schwendinger.

86.     But for Defendants conduct, Schwendinger reasonably expected to continue to be employed through PC for several years into the future.

87.     Schwendinger has suffered substantial economic loss, including loss of past and future earnings, profits, salary, bonuses, and employer contributions to his retirement account as a result of Defendants' conduct for which Defendants are liable.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff compensatory damages for lost compensation and future earnings in an amount to be proven at trial, and grant such other relief as the Court may deem just and appropriate.

## COUNT VI
### Tortious Interference with a Contract Against Leding, Jewell, and Babeshoff

88.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

89.     Schwendinger was a third-party beneficiary of the exclusive contracts between PC and the Facilities.

90.     Leding, Jewell, and Babeshoff were aware that Schwendinger was a direct (third-party) beneficiary to the valid and enforceable contracts between PC and the Facilities, and that his income was based on the anesthesia services he provided on behalf of PC at the Facilities pursuant to said contracts.  Leding, Jewell, and Babeshoff intentionally and maliciously interfered with the contracts and business relationship between PC and the Facilities by making defamatory and slanderous statements to physicians, nurses, and other health care providers and personnel associated with the Facilities.  As a result of Leding, Jewell, and Babeshoff's conduct, the Facilities breached their contracts with PC by, among other conduct, directing PC not to assign Schwendinger to provide services at the Facilities pursuant to PC's obligations under its contracts, and precluding Schwendinger from seeing patients at the Facilities.

91.     As a result of Leding, Jewell, and Babeshoff's conduct, Schwendinger was precluded from providing services on behalf of PC pursuant to PC's contract with the Facilities.

92.     But for Leding, Jewell, and Babeshoff's conduct, Schwendinger reasonably expected to continue to provide services at the Facilities pursuant to PC's contract with the Facilities for several years into the future.

93.     Schwendinger has suffered substantial economic loss, including loss of past and future earnings, profits, salary, bonuses, and employer contributions to his retirement account as a result of Leding, Jewell, and Babeshoff's conduct for which Leding, Jewell, and Babeshoff are liable.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff compensatory damages for lost compensation and future earnings in an amount to be proven at trial, and grant such other relief as the Court may deem just and appropriate.

## COUNT VII
### Tortious Interference with a Prospective Business Advantage

94.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

95.     Defendants were aware that Schwendinger's income pursuant to his contract with PC was based on the anesthesia services he provided at the Facilities.  As a result of Defendants' conduct, Schwendinger was improperly precluded from seeing patients at the Facilities, PC was directed not to assign Schwendinger to fulfill PC's obligations under its contracts with the Facilities, and Schwendinger was precluded

from performing the vast majority of anesthesia services available on behalf of PC, thereby significantly reducing the revenues he could generate through PC.

96.     Schwendinger reasonably expected to be employed continuously by PC, and provide services at the Facilities, for several years into the future.  Through their conduct, Defendants interfered with and precluded Schwendinger prospective business opportunities at PC and the Facilities.

97.     Defendants were also aware that Schwendinger was applying to prospective employers after he was precluded from practicing in the Clinton-Morrison area.  Defendants received a number of reference requests from prospective employers regarding Schwendinger, but either refused to respond to the requests, or provided false information about Schwendinger that blocked his employment opportunities.  As a result of Defendants' intentional and improper interference with Schwendinger's prospective business opportunities, Schwendinger's prospective business relationships failed to materialize.

98.     Schwendinger has suffered substantial economic loss, including loss of past and future earnings, compensation, salary, bonuses, and employer contributions to his retirement account as a result of Defendants' conspiracy for which Defendants are liable.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff compensatory damages for lost compensation and future earnings in an amount to be proven at trial, and grant such other relief as the Court may deem just and appropriate.

## COUNT VIII
### Defamation

99.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

100.    Leding, Babeshoff, and Jewell falsely claimed that Schwendinger was guilty of, among other things, improper patient care, sleeping during procedures, and being under the influence of alcohol while working.   Leding, Babeshoff, and Jewell repeatedly published these false and defamatory statements to Dr. Dooley, physicians, nurses, other health care providers and personnel associated with the Facilities, and members of the Clinton-Morrison community.

101.    After Schwendinger was precluded from working at the Facilities, upon information and belief, Leding, and other individuals acting on behalf of Mercy, provided false information about Schwendinger to prospective employers that blocked Schwendinger's efforts to obtain employment as a CRNA.

102.    Defendants' defamatory imputations and slanderous attacks on the integrity and moral character of Schwendinger detrimentally affected Schwendinger's business and profession, and are libelous per se.   Schwendinger is entitled to damages for impaired earning capacity, medical expenses, lost wages, and punitive damages for Defendants' willful and wanton misconduct.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff:

(a)    Actual damages for lost past and future earnings in an amount to be proven at trial;

(b)    The cost of Plaintiff's resulting medical expenses;

(c)    Punitive damages for Defendants' imputations of substance abuse and attacks on Schwendinger's integrity and moral character; and

(d)    Grant such other relief as the Court may deem just and appropriate.

## COUNT IX
### Intentional Infliction of Emotional Distress

103.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

104.    Defendants' conduct represents a deceitful, malicious, and egregious plan to destroy a colleague's professional reputation and future, solely for personal gain. Defendants harassed and bullied Schwendinger, and ultimately deprived him of the opportunity to practice the profession he chose and for which he was, and is, trained and qualified.

105.    As a result of Defendants' outrageous intentional conduct, Schwendinger has suffered a number of mental and physical health problems, including depression and the onset of cardiac problems.  Defendants are liable to Schwendinger for his resulting impaired earning capacity, medical expenses, lost wages, and other compensatory and consequential damages.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff:

(a)    Actual damages for lost past and future earnings in an amount to be proven at trial;

(b)    The cost of Plaintiff's resulting medical expenses;

(c)    Damages for emotional distress and past and future pain and suffering; and

(d)    Grant such other relief as the Court may deem just and appropriate.

## COUNT X
### Blacklisting

106.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

107.    The Facilities interfered with the hiring, firing, supervision, or discipline of Schwendinger in violation of their respective contracts with PC.

108.    The Facilities precluded Schwendinger from performing services pursuant to his employment contract, thereby effectively terminating his employment, and subsequently prevented Schwendinger from obtaining employment with other employers by publishing false and defamatory information about Schwendinger.

109.    Defendants' understanding and/or agreement that they would "blacklist" or otherwise deny employment to those who had either been fired or rejected for employment by another competitor, including Schwendinger, violates Iowa Code §730.1.

110.    As a result of Defendants' conduct, Schwendinger has suffered damages including the loss of substantial employment income for which Defendants are liable. As a result of Defendants' conduct, Schwendinger is entitled to treble damages under Iowa Code §730.2.

WHEREFORE, Plaintiff respectfully prays that this Court award Plaintiff:

(a)    Actual damages for lost past and future earnings in an amount to be proven at trial;

(b)    Treble damages pursuant to Iowa Code §730.2; and

(c)    Grant such other relief as the Court may deem just and appropriate.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in the Complaint.

Dated:  March 11, 2013                    Respectfully Submitted,


By:  */s/ Dorothy A. O'Brien*
        Dorothy A. O'Brien
        Attorney & Counselor at Law, PLC
        2322 E. Kimberly Road, Suite 100E
        Davenport, IA 52807
        Telephone:  (563) 355-6060
        Facsimile: (563) 355-6666

        *Local Counsel for Plaintiff*


        */S/Peter A. Gaido*
        Peter A. Gaido (IL Bar # 6201144)
        Daniel J. Becka (IL Bar # 6202427)
        Luke S. Behnke (IL Bar # 6308570)
        Gaido & Fintzen, LLC
        30 N. LaSalle Street, Suite 3010
        Chicago, IL 60602
        Telephone: (312) 346-7855
        Facsimile: (312) 346-8317
        Email:  pgaido@gaido-fintzen.com
                dbecka@gaido-fintzen.com

        *Counsel for Plaintiff*