# Exhibit A

# EXCLUSIVE ANESTHESIA SERVICES AGREEMENT

**THIS AGREEMENT**, made this 1st day of April, 2009, by and between Mercy Health Services – Iowa, Corp., a Delaware non-stock, non-profit corporation, doing business as Mercy Medical Center - Clinton ("MMCC"), and Pain Consultants P.C., an Iowa professional corporation ("GROUP");

**WHEREAS**, MMCC is a licensed acute care hospital which has an operating suite consisting of several operating rooms and related facilities;

**WHEREAS**, MMCC has determined that it would promote patient care, improve efficiency and encourage growth by entering into a contract with GROUP to provide Anesthesiology Services and Administrative Services to MMCC;

**WHEREAS**, GROUP possesses the skill and experience, through professionally competent and licensed anesthesiologists and certified registered nurse anesthetists (CRNAs) to provide Anesthesiology Services and Administrative Services to MMCC;

**WHEREAS**, the parties mutually desire to enter into this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and provisions of this Agreement, it is understood and agreed by and between the parties hereto as follows:

1.  <u>Appointment of GROUP</u>.  MMCC hereby appoints and designates GROUP to provide Anesthesiology Services and Administrative Services as defined below to MMCC and its patients, under the terms and conditions set forth in this Agreement.

GROUP hereby accepts its appointment and designation to provide Anesthesiology Services and Administrative Services to MMCC and its patients under the terms and conditions set forth in this Agreement.

2.  <u>Anesthesiology Services</u>.  GROUP, through its Anesthesiologists and CRNAs, shall directly provide all professional anesthesiology services and/or supervise and manage anesthesiology services for the benefit of individual MMCC patients, through such number of GROUP qualified Anesthesiologists and CRNAs ("Anesthesiology Providers") as may be required to meet MMCC's requirements for such services in a timely manner through scheduled or "on call" coverage, 24 hours a day, 365 days a year ("Anesthesiology Services").  Such Anesthesiology Services shall include: general anesthesia, including general surgical anesthesia, pediatric anesthesia, cardiac anesthesia, thoracic anesthesia, obstetrical anesthesia, extensive trauma anesthesia, neuro-anesthesia, and electroconvulsive therapy; intravenous sedation; intravenous regional anesthesia; regional blocks; ventilator therapy; pain therapy (including evaluation and office visits); subcutaneous tunneling of epidural / intrathecal catheters; and conductive anesthesia, as required by MMCC's patients (including inpatients, surgical outpatients and those receiving emergency care).  In addition, GROUP shall: (i) provide pre-evaluation anesthesia services in accordance with guidelines approved by both GROUP and MMCC; (ii) provide post-surgical monitoring for complications related to the administration of

anesthesia; and (iii) respond promptly to those codes to which an anesthesia provider is specifically paged, as practitioner availability permits. Anesthesiology Services provided by GROUP and its Anesthesiology Providers shall be performed in accordance with currently approved and generally accepted medical standards, as may be changed from time to time.

3.   _Administrative Services_. GROUP shall provide administrative services which are rendered for the general benefit of MMCC and all of its patients ("Administrative Services").

Administrative Services shall include, but are not necessarily limited to, advice, consultation, assistance, and/or non-binding recommendations to MMCC with respect to:

(a) Administrative Services reasonable and necessary for the practical and efficient day-to-day provision and monitoring of anesthesiology and anesthesia-related services, including but not limited to:

(i) Participation in scheduling of operating rooms in accordance with established guidelines as shall be mutually agreeable to the parties;

(ii) Development, monitoring and assessment of operating room policies and procedures, in conjunction with the Department of Surgery and Department of Nursing, as reasonable and necessary for the orderly administration of the operating rooms;

(iii) Consultation with MMCC administration in the development of the operating room budget, together with short and long range planning for the Operating Room Department;

(iv) Consultation with MMCC administration in the selection of the physical plant, clinical equipment, its maintenance and repair, and other related department needs, within approved capital and operating budgets;

(v) Organization, coordination and provision of scheduled and "on-call" anesthesia services for days, evenings, nights and weekends to assure adequate coverage of anesthesia services, as approved by MMCC;

(vi) Coordination with the appropriate medical staff, department heads, and committees to ensure that appropriate anesthesiology-related care is provided to patients of MMCC;

(vii) Development of proposals for appropriate related services in conjunction with MMCC administration;

(viii) Maintain, or cause to be maintained, accurate and complete records related to anesthesiology services, including an adequate filing system; and

2

(ix) Participation in such committees, including but not limited to, the O.R. Executive Committee and the Surgical Services Committee, as may be reasonably required for the effective and efficient provision of Administrative Services, as provided in this Agreement.

(b) Quality assurance services and peer review activities related to anesthesiology services, provided that these services are reasonable and in accordance with commonly accepted industry practice for independent anesthesiology contractors;

(c) Utilization review activities related to anesthesiology services, provided that these services are reasonable and in accordance with commonly accepted industry practice for independent anesthesiology contractors;

(d) Cost effectiveness and reduction services related to anesthesiology services for MMCC for effective and efficient utilization of MMCC equipment, goods, supplies, facilities, and services, provided that these services are reasonable and in accordance with commonly accepted industry practice for independent anesthesiology contractors;

(e) Consulting services, including recommendations with respect to annual capital and operating budgets for anesthesiology services and meeting attendance; provided, however, that GROUP's administrative consulting services shall constitute non-binding consulting, advice and recommendations, and GROUP shall not hire, fire, or discipline MMCC employees, provided that these services are reasonable and in accordance with commonly accepted industry practice for independent anesthesiology contractors;

(f) Education and teaching services in support of the education programs of MMCC and its Medical Staff as it relates to anesthesiology services, including but not limited to, student and/or residency programs, continuing education for nurses, certified registered nurse anesthetists, and other allied health professionals and community education, as further provided in this Agreement, provided that these services are reasonable and in accordance with commonly accepted professional practice for independent anesthesiology contractors; and

(f) Provide, consult, advise, recommend and participate in such other reasonable services that GROUP and MMCC jointly agree will enhance the quality or efficiency of MMCC's anesthesiology services or the integration of such services with other MMCC facilities, ventures or other health care delivery systems;

The ultimate authority, control and final decisions with respect to all matters within the scope of the Administrative Services shall remain the sole responsibility of MMCC. Neither GROUP nor any individuals providing Administrative Services on behalf of GROUP shall have

3

any power or authority to incur any debts or liabilities of any kind or nature whatsoever in the name of or on behalf of MMCC or take any action which would bind MMCC to contractual or other obligations.

In providing Administrative Services pursuant to this Agreement, GROUP shall report for information purposes, but not for control, to the Chief Executive Officer of MMCC.

3.1   <u>Participation in New Service Development</u>. GROUP shall develop and implement new services for MMCC, as requested and mutually agreed.

4.   <u>Medical Director</u>.   GROUP will provide MMCC with a Medical Director ("Medical Director"), who shall be the individual selected by GROUP, with the advance approval of MMCC, who shall be responsible for providing or arranging for the provision of Anesthesiology Services and Administrative Services provided by GROUP pursuant to this Agreement.  The Medical Director shall provide such services as shall be required by federal, state and local law, The Joint Commission and third party payors.

The Department Head shall be distinguishable from the Medical Director.  The Department Head shall be selected and maintained in accordance with the MMCC Medical Staff Bylaws and Department of Anesthesiology Rules and Regulations.

5.   <u>Compensation</u>

5.1   <u>Anesthesiology Services</u>.   GROUP shall bill and collect payment for Anesthesiology Services provided by GROUP to MMCC patients.  MMCC shall have the right to review and approve the fees charged by GROUP, which approval shall not be unreasonably withheld.

5.2   <u>Certain Costs to be Borne by MMCC</u>.  To ensure continuity of health services to the community and appropriate staffing to meet MMCC's needs for Anesthesiology Services, MMCC agrees to pay GROUP an amount sufficient to allow GROUP to provide services during periods of fluctuation in the demand for Anesthesiology Services.  Accordingly, commencing with the month beginning April 1, 2009, GROUP will calculate Expenses defined as follows:

(a)   The lesser of (i) actual locum employee expenses incurred by GROUP and provided by GROUP including but not limited to salaries, lodging, per diem meals, transportation in town, transportation to town and back home one time, licensing, and locum firm fees; or (ii) $50,000, pro-rated by the actual number of days locum expenses are incurred over the days in the applicable month; and

(b)   The lesser of (i) actual permanent GROUP employee expenses, including salaries, health insurance, pension accrual, licensing, continuing medical education, vacation coverage locum, and malpractice insurance, including tail coverage; or (ii) $35,000 per employee per month, pro-rated by the actual

number of days employee expenses are incurred over the days in the applicable month.

If Expenses for any month exceed the estimated collectible revenue of GROUP for services provided during that month, MMCC will pay the difference to GROUP. Collectible revenue shall be all fees collected by members of the GROUP on the MMCC medical staff for performing anesthesiology services in the MMCC geographic service area.

     5.3    Billing. GROUP agrees to bill all patients and third party payors for all services rendered and to use its best efforts to collect all patient accounts in as timely a manner as possible, all to the fullest extent permitted by law and in accordance with industry standards of practice and the standards of practice which any "affiliate" in which GROUP has ownership and/or control, as herein defined, applies to its own billing and collection efforts. GROUP shall establish and maintain an accurate and adequate bookkeeping system for all physician compensation and patient billings and receipts. MMCC shall have the right to review and audit GROUP's books and records relating to physician compensation, benefits, accounts receivable and cash collections as defined above, upon reasonable notice and during GROUP's normal business hours, and the parties agree to make reconciliations as necessary to conform to these audits.

    (a)  Submission of Invoice. GROUP shall prepare and submit to MMCC an invoice on the first day of each month equal to the amount by which Expenses exceed Total Estimated Monthly Revenue. If the first and/or last months of this Agreement are less than full calendar months, then the Deficit Amount shall be pro-rated based on the number of days GROUP has provided Anesthesiology Services or Administrative Services to MMCC pursuant to this Agreement. MMCC shall pay the invoice for the Deficit Amount in accordance with MMCC's usual and customary policies and procedures for accounts payable and remit such Deficit Amount to GROUP.

    (b)  Reconciliation. On an annual basis, sixty (60) days after the annual anniversary date (March 31) of this Agreement, GROUP shall present records to MMCC to show actual collections from services rendered from April 1 until the anniversary date (March 31) and actual expenses including administrative services payments under Section 5.4 of this Agreement for the same period. The excess expense over collections shall be compared to the actual monthly payments made under Section 5.3(a) and 5.4 and the difference will be paid to GROUP or MMCC, as the case may be.

     5.4    Compensation to GROUP for Administrative Services. MMCC shall compensate GROUP for Administrative Services provided by GROUP in the amount of One Hundred Eighty-Eight Dollars ($188) per hour, up to a maximum annual aggregate compensation for Administrative Services of Seventy-Five Thousand Dollars ($75,000), pro-rated for any partial year or month. GROUP agrees to provide appropriate documentation of time spent by hours and date in providing Administrative Services pursuant to this Agreement. Payment for Administrative Services will be made by monthly invoice in accordance with MMCC's usual and customary accounts payable policies and procedures.

5.5     Master Contract List. MMCC maintains a master contracts list, which may be amended from time to time, which contains all contracts with GROUP, physicians, owners or employees of the GROUP and/or immediate family members of such physicians.

6.     Performance Standards. In addition to such performance standards as are set forth in Exhibit B, GROUP shall meet the following performance standards with respect to the provision of Anesthesiology Services and Administrative Services pursuant to this Agreement.

6.1     Good Faith. GROUP shall act in good faith, with reasonable diligence and in the best interests of MMCC and its patients.

6.2     Physician Staffing and Qualifications.     GROUP shall provide Anesthesiology Services and Administrative Services with as many Anesthesiologists and CRNAs who meet the Anesthesiology Provider qualifications requirements in Section 7 as may be required to timely and continuously meet the needs of MMCC and its patients to achieve quality patient care as these needs may change from time to time. The timeliness of services and adequacy of Anesthesiologist and CRNA staffing to achieve quality patient care to meet the needs of this Agreement will be reviewed periodically by MMCC administration.

6.3     Third Party Payor Participation. With respect to Anesthesiology Services, GROUP shall participate on an assignment basis in Medicare, Medicaid, Blue Cross/Blue Shield, MMCC Health Plans sponsored programs, commercial insurer, managed care, direct contracting, alternative delivery system and all other third party payor contracting and programs in which MMCC currently participates and/or from whom MMCC accepts payment, or in which MMCC shall agree to participate and/or accept payment from time to time. MMCC represents that it will act in a reasonable manner and in good faith in making decisions as to whether to participate or not with new third party payors or programs, with specific consideration given to the potential contractual allowances GROUP would have to accept as a result of participation in light of contractual allowances GROUP currently accepts, as well as the potential contractual allowances MMCC would have to accept as a result of participation in light of the contractual allowances MMCC currently accepts, so that there is substantial, ratable equity or parity in the contractual allowances assumed between the parties.

6.4     Non-Discrimination. GROUP shall provide Anesthesiology Services and Administrative Services without regard to age, sex, disability, disease process, creed, ethnic origin, or other protected class against whom discrimination is prohibited by law, third party payor coverage status, or ability to pay.

6.5     Compliance with Laws, Accreditation and Other Requirements. GROUP shall assure that Anesthesiology Services and Administrative Services provided pursuant to this Agreement conform to all applicable federal, state and local laws, rules, regulations and standards as well as standards of all pertinent accrediting agencies, including without limitation, the Iowa Department of Inspections and Appeals, The Joint Commission, any third party payor requirements, the MMCC Medical Staff Bylaws and Department Rules and Regulations and all other applicable MMCC policies, procedures, rules and guidelines.

6.6    <u>Records and Clinical Service Reports</u>. GROUP shall bill and collect payment for Anesthesiology Services provided by GROUP.  GROUP shall be required to maintain all appropriate medical records and patient accounts according to accepted standards and third party payor requirements.  For purposes of this Section, "records" include the office medical record, charge tickets, appropriate MMCC medical records and any related patient medical/clinical correspondence.  GROUP shall be required to comply with all appropriate guidelines for professional service coding established by third party payors including, but not limited to, Medicare, Medicaid and Blue Cross/Blue Shield, Mercy Health Plans sponsored programs, and others.

6.7    <u>Risk Management</u>.  GROUP shall participate in the risk management programs conducted by MMCC and its medical staff necessary to ensure compliance with regulatory, accreditation, and insurance requirements and shall participate in such other risk management programs within MMCC as MMCC may reasonably request in furtherance of optimizing patient safety and quality care.

6.8    <u>Charity Care</u>.  GROUP shall participate with MMCC in such charitable activities involving Anesthesiology Services and Administrative Services provided pursuant to this Agreement as MMCC shall determine reasonable and appropriate from time to time and adhere to MMCC's charity care guidelines.

7.    <u>Anesthesiology Provider Qualifications</u>.  GROUP shall provide Anesthesiology Services and Administrative Services to MMCC patients through Anesthesiologists and CRNAs and continuously meet all of the following qualifications:

7.1    <u>Physician Licensure</u>.  Anesthesiologists shall have a license to practice medicine in Iowa and experience no revocation, corrective action, suspension or other disciplinary action or sanction as set forth in the Public Health Code or MMCC Medical Staff Bylaws or Department of Anesthesiology Rules and Regulations, as these may be amended from time to time.

7.2    <u>Drug Licensure</u>.  Anesthesiologists shall be fully licensed, certified or registered under any state or federal laws to dispense all drugs and biologicals required to be administered in providing Anesthesiology Services.

7.3    <u>Third Party Payor Status</u>.  Anesthesiologists and CRNAs shall participate or be eligible to participate in Medicare, Medicaid, Blue Cross/Blue Shield, MMCC Health Plans sponsored programs and other third party payor programs with which MMCC participates, and shall not have received a sanction, including but not limited to, a fine, suspension or termination from any such program, including but not limited to, sanctions which have the effect of eliminating or limiting MMCC's reimbursement from third party payors.

7.4    <u>MMCC Medical Staff</u>.  Anesthesiologists shall be required to be members in good standing of the MMCC Medical Staff and Department of Anesthesiology, to secure and maintain privileges consistent with Anesthesiology Services and Administrative Services to be provided, achieving such status by application as provided in the MMCC Medical Staff Bylaws and Department of Anesthesiology Rules and Regulations, to comply and abide with all

requirements of the MMCC Medical Staff Bylaws, including medical record, committee and medical staff attendance requirements, and the MMCC general policies and procedures (excluding human resources policies and procedures), and Department of Anesthesiology Rules and Regulations, and experience no limitation in medical staff privileges by sanction, disciplinary or any other action as set forth in the MMCC Medical Staff Bylaws, as the same may be amended from time to time. The appointment, reappointment and assignment of clinical privileges shall be in accordance with the MMCC Medical Staff Bylaws and any Department of Anesthesiology Rules and Regulations. Anesthesiologists tendered by GROUP to provide Anesthesiology Services and Administrative Services pursuant to this Agreement shall not have any right to any MMCC Medical Staff appointment, reappointment or privileges solely by virtue of being tendered to provide Anesthesiology Services and/or Administrative Services pursuant to this Agreement.

7.5     Board Certification.     Anesthesiologists shall be Board certified in Anesthesiology or be Board eligible and otherwise qualified to provide Anesthesiology Services by equivalent experience.

7.6     Ethical and Religious Directives.  Anesthesiologists shall provide services in a manner consistent with the Ethical and Religious Directives for Catholic Health Care Services as promulgated by the United States Conference of Catholic Bishops.

7.7     Physicians' Time Allocation and Acknowledgment.  Physicians shall be required to maintain and sign the Physician Time Allocation Form set forth in Exhibit A, the Physician Acknowledgment Form set forth in Exhibit B, all attached hereto and incorporated herein. Physicians shall not provide Anesthesiology Services pursuant to this Agreement unless and until the Physician Acknowledgment Form has been signed.

7.8     GROUP's CRNA Personnel.     To be qualified to render Anesthesia Services or Administrative Services under this Agreement, GROUP's employed CRNAs and any substitute or temporary CRNAs employed, contracted, hired or retained by GROUP to render any such services, must at all times during the course of this Agreement: (i) possess a valid and unlimited license/certification/registration to practice his or her profession pursuant to the laws of the State of Iowa; (ii) apply for, be awarded, and maintain unrestricted clinical privileges to practice his or her profession at MMCC pursuant to the Allied Health Practitioner Staff Bylaws; (iii) obtain and maintain professional liability insurance coverage in accordance with Section 13 of the Agreement; and (iv) be free from conviction of any felony offense, or any offense involving moral turpitude.

7.9     Restriction of CRNAs.  Whenever a CRNA's certification or other legal credential authorizing practice in Iowa is limited or restricted by the Iowa State Board of Nursing, or such person's clinical privileges are limited, or restricted under the Allied Health Practitioner Staff Bylaws, any provision of Anesthesiology Services which such person had been providing under this Agreement at MMCC which are within the scope of said limitation or restriction shall be automatically limited or restricted in a similar manner by GROUP, as of the date such action becomes effective and throughout its term. Whenever a CRNA is placed on probation by the Iowa State Board of Nursing, or otherwise under the Allied Health Practitioner Manual, the provision of Anesthesiology Services under this Agreement by such CRNA shall

8

automatically become subject to the same terms and conditions of the probation as of the date such action becomes effective and throughout its term.

7.10    Confidentiality and Proprietary Information and HIPAA. GROUP, on its own behalf and on behalf of its Physicians and non-physicians, regardless of whether they are employees or independent contractors, makes all of the following promises:

(a)    Confidentiality and Proprietary Information.

(i)    The parties acknowledge and agree that, in the course of performing Anesthesiology Services and Administrative Services under this Agreement, GROUP will have access to existing, and will regularly acquire, data and information which is confidential and proprietary to MMCC ("Proprietary Information"), which provides MMCC a competitive advantage in its relevant markets and which GROUP would not otherwise know. GROUP agrees and acknowledges that MMCC is the owner of all Proprietary Information.

(ii)    During the term of this Agreement and thereafter, regardless of the reason for termination of this Agreement, GROUP shall hold all Proprietary Information, whether in the form of raw data or otherwise, and whether a trade secret, copyrighted work, patentable subject matter, or otherwise, in confidence and shall not discuss, communicate or disclose to others, or make any copy or use of the Proprietary Information without first obtaining the written consent of MMCC or a patient, unless required by law.

(iii)    The parties further agree that in the course of performing its obligations under the Agreement, GROUP may organize, compile, manipulate, or categorize the Proprietary Information and other information into a variety of forms, including but not limited to, software databases, spread sheets, logs, directories, and the like ("Data Compilations"). GROUP agrees that any Data Compilation created by it during the term of this Agreement and as a result of performance of its obligations under this Agreement is a work for hire and all rights in it are owned by MMCC whether such Data Compilation is in the form of a copyrighted work or not.

(b)    Health Insurance Portability and Accountability Act (HIPAA).

(i)    Business Associates. The parties shall enter into a Business Associates Agreement in substantially the form set forth in Exhibit C, attached hereto.

8.    Qualifications and Conformance by GROUP with Anesthesiology Provider Qualifications. GROUP hereby represents, warrants and covenants that each of its

Anesthesiologists and CRNAs is and shall be at all times during the term of this Agreement in conformance with all of the requirements in Section 7, above.

        8.1    <u>Physician Consent to Time Allocation and Acknowledgment</u>.  GROUP shall be required to obtain and maintain on file with a copy to MMCC:

> (a)  The signature of each physician providing Anesthesiology Services and Administrative Services on behalf of GROUP pursuant to this Agreement, using the Physician Time Allocation form, set forth in Exhibit D; and

> (b)  The signature of each physician providing Anesthesiology Services and Administrative Services on behalf of GROUP pursuant to this Agreement, using the Physician Acknowledgment set forth in Exhibit E.  No GROUP physician shall provide Anesthesiology Services or Administrative Services pursuant to this Agreement unless and until the physician signs the Physician Acknowledgment Form.

        8.2    <u>Non-Compliance by GROUP Anesthesiologists and CRNAs with Anesthesiology Providers' Qualifications</u>.  GROUP shall, at all times, have the affirmative obligation to ensure that services provided pursuant to this Agreement, including Director Services, be provided only by Anesthesiologists and/or CRNAs meeting the Anesthesiology Provider Qualifications set forth in Section 7.  GROUP shall be obligated, upon notification from the MMCC Medical Staff that an Anesthesiologist and/or CRNA does not meet the qualifications and after exhaustion of all applicable Medical Staff Appeals (except in the instance of a Summary Suspension or Automatic Suspension), to remove the Anesthesiologist and/or CRNA in question from duties pursuant to this Agreement, and shall provide within a reasonable period of time an appropriate replacement Anesthesiologist and/or CRNA who meets the Anesthesiology Provider Qualifications.  Such removal by GROUP shall not be considered an action by MMCC with respect to hiring, firing, supervising or disciplining of a GROUP Anesthesiologist and/or CRNA, which are internal matters of GROUP.

    9.    <u>Exclusivity</u>.

        9.1    In recognition of the substantial benefits which inure to MMCC and its patients such as:

> (a)  The promotion of consistency and high quality in providing Anesthesiology Services and Administrative Services;

> (b)  Improved administration and efficiency;

> (c)  Promotion of cost containment and economies of scale;

> (d)  Adequate physician staffing to ensure the continuous and timely provision of high quality Anesthesiology Services and Administrative Services on a 24 hours a day, 7 days a week basis;

(e) The ability of MMCC to provide a more complete range of health care services to patients;

(f) Improvement of the ability of MMCC to effectively compete in its geographic service area so as to remain economically viable and able to pursue its mission;

(g) Furtherance of MMCC's commitment to community outreach activities; and

(h) Efficiency and quality in MMCC's administration of Anesthesiology Services and Administrative Services;

MMCC hereby grants GROUP the exclusive right to provide Anesthesiology Services and Administrative Services to MMCC and its patients pursuant to the terms of this Agreement. Notwithstanding anything to the contrary provided herein, the grant of exclusivity to GROUP for the provision of Anesthesiology Services, shall not preclude the performance of more routine anesthesia procedures (inpatient and outpatient) including without limitation, IV sedation or local anesthesia infiltration and/or intubation, performed by or under the direction of other physicians within the scope of their respective medical disciplines and standards of medical practice at MMCC.

9.2    Post Termination Obligations / Effect of Termination on Medical Staff Privileges.

(a) GROUP agrees, and as a condition of employment or independent contractor contract, shall cause its employees or independent contractors providing services pursuant to this Agreement to agree, that this grant to GROUP of an exclusive contract for the provision of Anesthesiology Services and Administrative Services at MMCC requires that upon termination of this Agreement for any reason, or upon termination of their employment or independent contractor contract   with GROUP, clinical privileges or Anesthesiology Services of the physicians or allied health professionals rendering services on behalf of GROUP shall automatically terminate, and such physicians or allied health professionals shall waive and not be entitled to any hearing or appeal otherwise provided; the rules of the governing body, MMCC's Medical Staff Bylaws or Department Rules and Regulations to the contrary notwithstanding. Compliance with this Section shall be a condition precedent to this Agreement.

(b) Any physician or allied health professional whose clinical privileges to perform Anesthesiology Services is automatically terminated under this Section may retain any clinical privileges to perform non-Anesthesiology Services or non-Administrative Services or may apply to MMCC's medical staff, in accordance with the applicable Medical Staff Bylaws, for clinical privileges to perform services other than Anesthesiology Services covered by this Agreement.

11

9.3     Saving Provision.  The parties agree and stipulate that the agreements and covenants contained in Section 9 are fair and reasonable in light of all of the facts and circumstances of the relationship between them, including MMCC's exclusive grant to GROUP to provide Anesthesiology Services and exclusive contract to provide Administrative Services pursuant to this Agreement.  However, the parties are aware that in certain circumstances, courts have refused to enforce certain of these covenants.  Therefore, in furtherance of, and not in derogation of the provisions of Section 9, the parties agree that in the event a court should decline to enforce these provisions, these sections shall be deemed to be modified to restrict GROUP's activities, and those of its physicians, to the maximum extent, in both time and geography, which the court shall find enforceable; however, in no event shall these sections be deemed to be more restrictive to GROUP and its physicians or allied health professionals than those contained herein.

10.     Independent Contractor.  In the performance of the Anesthesiology Services and Administrative Services to be rendered pursuant to this Agreement, it is mutually understood and agreed that GROUP shall be at all times acting and performing as an independent contractor. Nothing in this Agreement is intended to create an employer/employee relationship or a joint venture relationship between the parties or between individuals providing services on behalf of GROUP and MMCC.

The parties agree that the individuals providing services on behalf of GROUP are not employees of MMCC and, accordingly, are not eligible for any compensation, fringe benefits, pension, workers' compensation, sickness or health insurance benefits or other similar benefits accorded employees of MMCC.  Individuals providing services on behalf of GROUP shall look solely to GROUP for the above.  The parties agree that MMCC will not participate in the hiring, firing, supervision or discipline of individuals providing services on behalf of GROUP.  The parties agree that MMCC will not withhold on behalf of individuals provided by GROUP any sums for income tax, unemployment insurance, social security, or any other withholding pursuant to any law or requirement of any governmental body.  Those individuals shall look solely to GROUP for the above.  GROUP will indemnify and hold MMCC harmless from any and all loss or liability arising with respect to any such payment, withholdings, and benefits, if any.

Nothing in this Agreement is intended to allow MMCC to exercise control or direction over the manner or method by which GROUP and the individuals providing services on behalf of GROUP perform the Anesthesiology Services and Administrative Services which are the subject matter of this Agreement.  MMCC is not required to provide any instruction or training to GROUP or individuals providing services on behalf of GROUP.  GROUP reserves to itself the right to designate the hours, duties and work assignments, sequence of performance and work locations of individuals who are performing Anesthesiology Services and Administrative Services pursuant to this Agreement. MMCC shall have no right of approval over the selection of such individuals so long as they possess the physician qualifications required under this Agreement.  GROUP shall, however, be strictly accountable to MMCC to ensure that its work and functions shall at all times be performed in accordance with currently approved and generally accepted professional standards and the terms of this Agreement.  In this regard, the sole interest of MMCC is to assure that all Anesthesiology Services and Administrative Services

shall be performed in a competent, efficient, and satisfactory manner and in accordance with the terms of this Agreement.

MMCC shall not be responsible for any business or commuting expenses incurred by GROUP or individuals providing services on behalf of GROUP.

The parties understand and acknowledge that GROUP provides or may provide services to GROUP's own patients. MMCC shall not interfere with or control any aspect of GROUP's private business, including but not limited to, GROUP's governance, management, operations and/or other internal affairs.

GROUP and individuals provided by GROUP shall not be identified as MMCC's employees through the use of identification badges, stationary, or by any other means. Individuals provided by GROUP shall be identified by use of photo identification to patients and the community as employees of GROUP.

11. <u>Provision of Non-Physician Personnel, Equipment and Supplies</u>. MMCC shall provide or arrange for non-Anesthesiologist and non-CRNA personnel, equipment, goods and supplies for MMCC patients, within approved capital and operating budgets; provided, however, that nothing in this Section shall be construed to require MMCC to provide or arrange for personnel, equipment, goods and supplies in support of GROUP's business with respect to GROUP's governance, management, operations, relationships with other entities and/or other internal affairs.

11.1 <u>Facilities, Equipment and Supplies</u>. MMCC shall provide and maintain such facilities and equipment, medicines, medical and clerical supplies, utilities, building maintenance, housekeeping, security, scientific and office equipment, data processing hardware, and software as MMCC and GROUP shall deem necessary for MMCC's patients, consistent with general MMCC policies and subject to approved annual capital and operating budgets. Department Heads/Directors shall be responsible for providing advice, consultation and non-binding recommendations from time to time to MMCC's designees concerning the need for these items, but final decisions with respect to all such matters shall remain the sole responsibility of MMCC. Neither GROUP, the Department Heads/Directors, nor any of the other physicians shall have any power or authority to incur any debts or liabilities of any kind or nature whatsoever in the name of or on behalf of MMCC.

11.2 <u>Non-Physician Personnel</u>. MMCC shall provide, consistent with human resources policies and procedures, employee handbooks and work plans, and subject to approved annual capital and operating budgets, such non-physician clinical, administrative and technical staff, including without limitation, nursing staff, medical technicians, and administrative staff, as MMCC shall deem reasonably necessary for MMCC patients. The selection, training, scheduling, evaluation and retention of such non-physician personnel shall be made solely by MMCC after soliciting advice, consultation and non-binding recommendations from the Department Heads/Directors. Salaries and other personnel matters for all such personnel shall be determined solely by MMCC.

12. <u>No Referral Requirement</u>. Nothing in this Agreement shall be construed to require MMCC or GROUP and its Anesthesiologists to make referrals of patients to one another. No payment is made under this Agreement in return for the referral of patients or in return for the ordering, purchasing or leasing of products or services from MMCC.

13. <u>Insurance</u>. GROUP shall obtain and maintain, during the term of this Agreement, at its sole cost and expense, professional liability insurance on a per occurrence basis or claims made basis covering GROUP and each of its physicians or other employees providing Anesthesiology Services or Administrative Services pursuant to this Agreement. The limits of liability shall be not less than $1,000,000 per occurrence and $3,000,000 annual aggregate, with no deductible. GROUP shall provide, or cause to be provided, reasonably satisfactory evidence of such insurance to MMCC. GROUP shall immediately provide, or cause to be provided, to MMCC notice of any change in or cancellation of such insurance coverage.

14. <u>Indemnification</u>. Each party agrees to indemnify, defend and hold harmless the other party, including, but not limited to, their officers, employees, directors and agents (collectively, the "Indemnified Party"), from and against all liability, claims, losses, damages and expenses, including reasonable legal fees and expenses, arising from the failure of such party, or its directors, officers, employees, agents or contractors, to observe or perform any of the covenants, warranties or representations set forth herein or otherwise arising from their negligent acts and omissions in the performance of their respective duties and obligations under this Agreement. In such an event, the Indemnified Party shall have the option either of providing its own defense for which Indemnitor shall promptly pay the Indemnified Party its reasonable cost and expenses or the Indemnified Party may tender the defense to Indemnitor which shall assume it.

Each party shall notify the other within 10 days of receipt of any lawsuits, claims or notices of intent to file a lawsuit based in any manner on services rendered pursuant to this Agreement.

15. <u>Term</u>. This Agreement shall commence as of April 1, 2009 and continue for a term of three (3) years ending March 31, 2011. This is the Initial Term. In addition, this Agreement shall automatically renew for no more than three (3) additional terms of one (1) year each, which shall be the Renewal Term, unless either party provides notice in writing to the other party no later than one-hundred twenty (120) days before the termination date of either the Initial Term or the first Renewal Term.

16. <u>Termination</u>. This Agreement may sooner terminate as follows:

16.1 In the event that either party shall give notice to the other that such other party has substantially defaulted in the performance of any obligation under this Agreement and such default shall not have been cured within thirty (30) days following the giving of such notice, the party giving such notice shall have the right to terminate this Agreement at the expiration of such thirty (30) day period.

16.2 <u>Termination Based on Legal Event/Maintenance of Tax Exempt Status</u>. Notwithstanding any other provision of this Agreement, if the governmental agencies which administer the Medicare, Medicaid or other federally funded Programs, or any other federal, state

or local governmental or non-governmental agency, or any court or administrative tribunal passes or promulgates any law, rule, regulation, standard, interpretation, order, decision or judgment, including, but not limited to, those relating to any regulations pursuant to federal or state anti-kickback or self-referral statutes, which, in the good faith judgment of MMCC's counsel, materially and adversely affects MMCC's licensure, accreditation, certification or ability to refer, to accept any referral, to bill, to claim, to present a bill or claim for reimbursement or a risk of prosecution or civil monetary penalty (collectively and individually, the "Adverse Result"), MMCC shall have the right, in good faith, to notify GROUP of its intent to either amend or terminate this Agreement upon 30 days prior written notice. During said 30 day period, the parties shall negotiate in good faith to amend this Agreement to eliminate the Adverse Result. In the event that the parties are unable to renegotiate the Agreement to eliminate the Adverse Result, this Agreement shall terminate upon the expiration of said 30 day period.

The parties hereto understand that MMCC is a nonprofit corporation that has outstanding tax-exempt financing and participates in the Medicare and Medicaid Programs. MMCC is bound by the federal and state laws, regulations and interpretations thereof pertaining to the foregoing. The parties acknowledge and agree that this Agreement shall be interpreted and construed to be in compliance with all of the foregoing, as the same may be adopted, amended or interpreted from time-to-time, and as they may affect MMCC, its licensure, nonprofit status, tax-exempt financing and participation in and reimbursement by the Medicare and Medicaid Programs. In the event that this Agreement, or one or more of its terms or provisions is reasonably interpreted by MMCC's counsel to pose a risk of violation of any of the foregoing laws, regulations or interpretations thereof, MMCC's bond covenants, the conditions or restrictions pertinent to providers who participate in the Medicare and Medicaid Programs, or to adversely affect MMCC's reimbursement thereunder, the parties agree (i) to continue to perform their respective obligations hereunder except for the offending provisions and (ii) to negotiate diligently and in good faith to amend this Agreement without the offending provisions. In the event that the parties are unable to perform their respective duties and obligations hereunder without performing the offending provisions, or are unable to delete the offending provisions, then this Agreement shall terminate immediately upon written notice served by MMCC in accordance with the notice provisions in this Agreement.

16.3 Upon termination of this Agreement for any reason, GROUP shall cause its physicians to cooperate with MMCC in the orderly transfer of Anesthesiology Services and Administrative Services.

Notwithstanding the termination of this Agreement, any liability or obligation of either party which may have accrued prior to such termination shall continue in full force and effect, including but not limited to insurance obligations.

In the event GROUP, with the consent of MMCC, renders Anesthesiology Services or Administrative Services after the termination date hereof for any reason, it shall do so on a month-to-month basis for a period not to exceed six (6) months (with either party having the right to terminate this Agreement at the end of any month, upon fifteen (15) days prior written notice), and all of the other terms and conditions of this Agreement shall remain in full force and effect.

15

16.4    In the event of a termination for legislative, judicial, regulatory or administrative change, as a result of which a determination is made by order, decree, settlement agreement, opinion or by any other means which is binding on the parties, that GROUP has received an excess benefit/above fair market value payment, then MMCC shall be entitled to recover the amount of such excess benefit/above fair market value payment from GROUP.

17.    Workers' Compensation Insurance.  GROUP shall obtain and maintain during the term of this Agreement, at its sole cost and expense, workers' compensation insurance for individuals provided by GROUP pursuant to this Agreement.

18.    Alternative Dispute Resolution

18.1.    Internal Resolution.  Either party may request a meeting at any time to discuss matters pertaining to the Anesthesiology Services or other matters arising from this Agreement by providing notice to the other party in accordance with Section 20 of this Agreement; such notice shall specify a suggested time, date and place for the meeting as well as the topic of the meeting (which shall be set forth in sufficient detail to allow the other party to prepare for the discussion).  The parties may each designate an officer of MMCC or GROUP, respectively, to attend such meeting.

18.2.    Next Steps.

(a)    Mediation.  If the matter has not been resolved within thirty (30) days of the party's notice, or if the party receiving such notice cannot or will not meet within thirty (30) days, either Party may initiate mediation of the controversy or claim by referral to a mutually acceptable mediator.  Such mediation shall be subject to the privileges and confidentiality set forth in the Uniform Mediation Act, Iowa Code §679C.101, et. seq.  Mediation may be terminated by either party if a resolution is not agreed upon within thirty (30) days of the initiation of mediation.  The status quo shall be maintained during the entire dispute resolution process, provided however that nothing herein shall be construed as precluding the normal process of peer review in accordance with the Bylaws of the Medical Staff or the operation of other provisions of this Agreement.

(b)    Attorney Meeting.  If the parties are unable to resolve the issue through the meeting process described in Section 18.2(a) above, then as the next step each shall designate an attorney to represent their interests.  The attorneys shall meet and diligently attempt in good faith to reach a settlement on the issue.

(c)    Legal Remedies.  If the attorneys are unable to reach a settlement within thirty (30) days, then either Party may pursue any available remedies in law or equity.  It is expressly agreed that no legal or equitable action shall be initiated unless and until the parties have exhausted the dispute resolution process set forth herein.

19.    Government Access to Records.  In the event that the Secretary of Health and Human Services or the Comptroller General of the United States or their representatives

16

determine that this Agreement is a contract described in Section 1861(v)(1)(I) of the Social Security Act, GROUP agrees that until the expiration of four (4) years after the furnishing of services pursuant to this Agreement, GROUP shall make available, upon written request, to MMCC or the Secretary of Health and Human Services, or upon request of the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement, and books, documents and records of GROUP that are necessary to certify the nature and extent of costs paid by MMCC pursuant to this Agreement. If GROUP carries out any of the duties of this Agreement through a subcontract with a value or cost of $10,000 or more over a twelve (12) month period with a related organization as defined in 42 C.F.R. §413.17, such subcontract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request to MMCC or the Secretary of Health and Human Services, or upon request to the Comptroller General of the United States, or any of their duly authorized representatives, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

20.    Notice.  Any notice required to be given pursuant to the provisions of this Agreement shall be in writing and shall be sent by certified mail to the parties at their respective business addresses indicated herein:

> MMCC:
> Attention: President and CEO
> Mercy Medical Center – Clinton
> 1410 North 4th Street
> Clinton, IA  52732
>
> GROUP:
> Attention: Chief Anesthesiologist and Medical Director
> Pain Consultants, P.C.
> 7 Highland Green Court
> Bettendorf, IA  52722

21.    Assignment.  This Agreement may not be assigned without the written consent of both parties.

22.    Invalidity.  The parties hereto have negotiated and prepared the terms of this Agreement in good faith with the intent that each and every one of the terms, covenants and conditions herein be binding upon and inure to the benefit of the respective parties. Accordingly, if any one or more of the terms, provisions, promises, covenants or conditions of this Agreement or the application thereof to any person or circumstance shall be adjudged to any extent invalid, unenforceable, void or voidable for any reason whatsoever by a court for competent jurisdiction, such provision shall be as narrowly construed as possible, and each and all of the remaining terms, provisions, promises, covenants and conditions of this Agreement or their application to other persons or circumstances shall not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.  To the extent this Agreement is in violation of applicable law, then the parties agree to negotiate in good faith to amend the Agreement, to the extent possible consistent with its purposes, to conform to law.

23.    Governing Law.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Iowa.

24.    Entire Agreement and Modifications to Agreement.  This Agreement constitutes the entire agreement of the parties.  Further, this Agreement supersedes all prior negotiations, oral understandings, resolutions and statements of intent.  This Agreement cannot be changed, modified, altered, terminated or discharged in any manner except by an instrument in writing, signed on or subsequent to the date hereof by the party or parties against whom enforcement of the change, modification, alteration, termination or discharge is sought, including without limitation the provisions of this Section.

25.    Authority to Execute Agreement.  Each of the parties hereto represents and warrants that it has the authority to execute this Agreement, and that the execution has been authorized by resolution of its governing body and adopted in accordance with its articles of incorporation and bylaws.

26.    Mutual Cooperation.  GROUP and MMCC shall promptly notify the other of any knowledge regarding any occurrence which may result in a claim of any nature whatsoever against either of them and shall cooperate with each other whenever any claim is filed against either of them with respect to services rendered by GROUP pursuant to this Agreement.

27.    Limited Enforcement.  This Agreement is intended solely for the benefit of the parties hereto, and there is no intention, express or otherwise, to create rights or interest for any patients, parent, guardian or personal representative of any patient or any party or persons other than MMCC and GROUP.

28.    Waiver of Breach.  The waiver by any party hereto of any breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent or other breach of the same or any other provision of this Agreement by the other party.

29.    Electronic Medical Record Information Technology.  GROUP shall participate in the implementation and ongoing maintenance of the electronic medical record, including but not limited to (i) participation in MMCC sponsored health information technology committees as necessary and requested; (ii) participation in health information technology workflow design to enhance efficiency of current and future state operations, (iii) participation in health information technology software updates for the electronic medical record, and (iv) participation in computerized physician order entry consistent with the organization's plan.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

18

MERCY MEDICAL CENTER - CLINTON:

By: _____

Its: ___11/5/09_____


PAIN CONSULTANTS, P.C.

By: _____

Its: _____

# EXHIBIT A
## PHYSICIAN TIME ALLOCATION FORM

In order to comply with Medicare Regulation 42 CFR § 415.60, the parties agree as follows:

Section 415.60(f) states that Medicare will reimburse each hospital, independently, for physician compensation costs only if each hospital, independently, submits to Medicare a written allocation agreement between the hospital and the physician that specifies the respective amounts of time the physician spends in furnishing physician services to the hospital, physician services to individual patients, and services that are not reimbursable by Medicare.  Section 415.60(e) states that a written allocation agreement is not required if the hospital and physician agree to accept the assumed allocation that all of the physician's services are direct services to individual patients.

Section 415.60(g) states that hospitals claiming payment for services must (1) maintain the time records or other information it used to allocate compensation in a form that permits the information to be validated by Medicare, (2) report the information on which the compensation allocation is based to Medicare on an annual basis and promptly notify Medicare of any revisions to the compensation allocation, and (3) retain each compensation allocation agreement and the information on which it is based for at least four years after the end of each cost reporting period to which the allocation applies.

Therefore, MMCC and GROUP agree as follows:

1.      During a one-year (12 month) period, Medical Director shall spend an annual total of approximately 400 hours of time in furnishing physician services to MMCC as defined in Medicare Regulation 42 CFR § 415.60, including but not limited to, administrative, education and supervisory services.

2.      During a one-year (12 month) period, Medical Director shall spend an annual total of approximately 20 hours in furnishing physician services to individual patients which qualify for reasonable charge reimbursement pursuant to Medicare Regulation 42 CFR § 415.60.

3.      During a one-year (12 month) period, Medical Director shall spend an annual total of approximately 0 hours in performing services that are not reimbursable by Medicare.

4.      GROUP agrees to maintain appropriate written records substantiating the number of hours actually spent furnishing medical director services to MMCC, medical services to individual patients, and services not reimbursable by Medicare.

5.      GROUP agrees to include all documentation in the medical record which is necessary to entitle MMCC to obtain reimbursement under Medicare and other third party payor programs.

PHYSICIAN:                              PAIN CONSULTANTS, P.C.:

_____                 By: _____

Dated: ___4/1/09___                     Its: _____

**EXHIBIT B**
**PHYSICIAN ACKNOWLEDGMENT FORM**

Physician will be providing Anesthesiology Services and/or Administrative Services at MMCC Medical Center – Clinton ("MMCC") located in Clinton, Iowa, pursuant to an Agreement between MMCC and Pain Consultants, P.C. ("GROUP").

Physician has reviewed said Agreement and acknowledges that his/her provision of Anesthesiology Services and/or Administrative Services is conditioned upon Physician's adherence to its terms. In consideration for the benefits set forth in the Agreement, Physician agrees to comply with and be individually bound by all of the terms of the Agreement, including but not limited to the following sections of heightened importance to Physician:

| Sections: | 7 | Anesthesia Providers' Qualifications; |
|---|---|---|
| | 7.7 | Physicians' Time Allocation and Acknowledgment; |
| | 8.2 | Non-Compliance by GROUP Anesthesiologists with Anesthesia Provider Qualifications; |
| | 9.3 | Post Termination Obligations/Effect of Termination on Medical Staff Privileges; and |
| | 10 | Independent Contractor. |

Every and all other provisions of the Agreement.

PHYSICIAN:                                     PAIN CONSULTANTS, P.C.:

_____                By: _____

                                                       Its: _____

Dated: __4/1/0?___

22

# EXHIBIT C
## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") is entered into by and between Mercy Medical Center - Clinton ("MMCC") and Pain Consultants, P.C. ("GROUP"), an Iowa professional corporation and applies to all services and relationships between MMCC and GROUP.

A.   <u>HIPAA Dominance.</u>  In the event of a conflict or inconsistency between the terms of any other agreement between the parties and this language, this language controls.  This language is required by the Health Insurance Portability and Accountability Act of 1996, as amended, and all final regulations issued pursuant to such Act ("HIPAA").

B.   <u>Protected Health Information.</u>  Any Protected Health Information ("PHI") as defined by HIPAA that was collected, created or received from or on behalf of MMCC is PHI.  For purposes of these obligations PHI means all PHI in GROUP's possession or under its control (e.g., agents) and all PHI collected, created or received by GROUP or its agents on or after the effective date of this HIPAA language.

C.   <u>Employees.</u>  GROUP agrees to instruct its employees and temporary agency employees regarding the confidentiality, privacy and security of PHI.  GROUP shall not disclose to its employees or permit them to access, view, obtain, copy, review or use any PHI that is not necessary to their services to MMCC.  GROUP agrees to maintain strict performance standards, including disciplinary actions, with respect to wrongful access to, copying, viewing, misuse or disclosure of PHI.

D.   <u>Agents and Sub-Contractors.</u>  GROUP shall ensure its permitted agent(s) and sub-contractor(s) (if agents or sub-contractors are permitted) are advised in writing of GROUP's obligations with respect to PHI.  GROUP shall require that the permitted agent(s) and sub-contractor(s) agree in writing to the same restrictions and obligations as GROUP and its employees.  GROUP also shall require its permitted agent(s) and sub-contractor(s) to agree in writing to implement reasonable administrative, physical and technical safeguards to protect the confidentiality, integrity and availability of all MMCC PHI.  GROUP agrees to make a list of such agents and sub-contractors available to MMCC upon request.

E.   <u>Permissible Uses of PHI.</u>

    1.   <u>Using and Disclosing PHI.</u>  GROUP may use or disclose PHI only as permitted by this HIPAA language or as required by law. GROUP may use PHI only to directly perform services pursuant to

23

this Agreement.

2. <u>Handling PHI</u>. GROUP may use or disclose PHI only as permitted by this HIPAA language or as required by law. GROUP may use PHI only to directly perform services pursuant to this Agreement.

3. <u>Minimum Necessary</u>. GROUP is permitted to access and use only the minimum necessary PHI to the extent required to perform its duties under this Agreement. GROUP agrees not to use or store PHI or identifying information (e.g., name, date of birth, etc.) if the information can be removed and is not essential to the services to be provided.

4. <u>Data Aggregation</u>. GROUP is permitted to use PHI for data aggregation for the health care operations of MMCC, upon written request of MMCC.

5. <u>GROUP's Internal Management Uses of PHI</u>. GROUP may use PHI for internal management and administration of GROUP, but only in connection with the direct performance by GROUP through its employees of services for MMCC pursuant to this Agreement.

F. <u>Information System Access and GROUP's Acceptance of Responsibility for User</u>. GROUP agrees to comply with all of MMCC's information system policies and procedures applicable to accessing, using or connecting to any MMCC information system. GROUP agrees that its employees will only use their access security codes or passwords to perform their duties under this Agreement and that employees are strictly prohibited from disclosing their security codes or passwords to anyone, including family, friends, fellow workers (other than the system security administrator), supervisors, and subordinates for any reason. GROUP agrees its employees will keep their security codes and passwords in confidence and not misuse or attempt to alter MMCC's information system in any way. GROUP acknowledges that MMCC has, at its sole discretion, the right to immediately terminate the GROUP's and/or any of its employees right to access any aspect of MMCC's information system. GROUP agrees to:

1. Be responsible for all actions and/or omissions by its employees and/or agents and agrees to indemnify and hold MMCC harmless for any violation of patients' privacy or security by any person granted access through GROUP, and;

24

2.    Notify the MMCC Resolution Center within 5 business days if any of its employees or agents who have access to MMCC systems or applications no longer need or are eligible for access due to leaving GROUP, changing their job duties or for any other reason, and;

3.    To report any actual or suspected privacy or security violations made by its employees and/or agents to the MMCC Privacy Official and/or Security Official.

G.    <u>Security, Reporting and Record Keeping</u>.

1.    <u>Safeguards</u>. GROUP agrees to implement reasonable administrative, physical and technical safeguards to protect the confidentiality, integrity and availability of all PHI. GROUP agrees to implement reasonable electronic security practices for MMCC PHI which is transmitted, stored, received, or used in electronic form.

2.    <u>Reports</u>. GROUP will (i) promptly report to MMCC any use or disclosure of PHI not permitted by this HIPAA language; (ii) any successful security incident of which GROUP becomes aware; and (iii) in summary form, upon request of MMCC, any unsuccessful security incident of which GROUP becomes aware. If the definition of "Security Incident" in the HIPAA regulation is modified to remove the requirement for reporting "unsuccessful" security incidents, section (ii) above shall no longer apply as of the effective date of such regulation modification.

3.    <u>Recording Keeping</u>. GROUP agrees to implement an appropriate record keeping process to enable it to comply with HIPAA.

H.    <u>Patient Rights With Respect To PHI</u>.

1.    <u>Patient Rights</u>. GROUP is advised that under HIPAA patients have the right to review their PHI; amend their health records; request an accounting of disclosures of PHI and request restrictions on the use and disclosure of PHI.

2.    <u>Notice of Patient Contact</u>. GROUP shall promptly notify the privacy officer of MMCC if a patient contacts GROUP in connection with the patient's PHI, except if such patient contact is for ordinary copying of medical records.

3.    <u>Assistance</u>. To assist MMCC in complying with HIPAA, GROUP shall, at any time during this Agreement, make MMCC PHI in its

25

possession or under its control available to MMCC within 5 calendar days of a MMCC request.

I.      Notice of Legal Contact.  GROUP shall notify MMCC in writing of a disclosure request prior to disclosing MMCC PHI if such disclosure is required by law or court order.

J.      Amendment.  Upon enactment of any law, regulation, court decision or relevant government publication and/or interpretive policy affecting the use or disclosure of PHI, MMCC, by written notice to GROUP, may amend this Agreement in such manner as MMCC determines necessary to comply with same.

K.      Access for Audit.  GROUP shall make its internal practices, books and records relating to the use and disclosure of any PHI available to MMCC and to other authorized government investigators for purposes of determining GROUP's and MMCC's compliance with the HIPAA. GROUP agrees that MMCC has the right to audit, investigate, monitor, access, review and report on GROUP's use of any MMCC PHI, with or without advance notice or knowledge from MMCC.

L.      Termination of Relationship for Failure to Comply.

    1.      Immediate Termination and Cure.  MMCC may immediately terminate its relationship with GROUP upon written notice to GROUP without damages or liability to MMCC if MMCC determines that GROUP has violated a material requirement related to HIPAA. MMCC, at its option and within its sole discretion, has the right to take reasonable steps to cure the breach and/or may (a) allow GROUP to take steps to cure the breach, and (b) in the event of such a cure, elect to keep the relationship in force.

    2.      PHI Obligations upon Termination or Expiration.  Unless GROUP is required by law to maintain PHI, GROUP shall return (and not retain any copies of) all PHI in its possession or under its control within 30 days after the termination/expiration of this Agreement. If GROUP is unable to return PHI, then GROUP shall notify MMCC of the reasons for being unable to return PHI in writing and must, at a minimum, maintain PHI as required by this Agreement and HIPAA for so long as the MMCC PHI exists. GROUP shall not transfer possession of MMCC PHI without prior written approval of MMCC. If at any time GROUP determines it is unable to protect MMCC PHI, GROUP shall destroy all MMCC PHI and all copies and maintain proof of such destruction.

Authorized representatives of the parties have executed this as of the last day written below.

PAIN CONSULTANTS, P.C.

Name: _____

Title: _____

Date: _____

MERCY MEDICAL CENTER - CLINTON

Name: _____

Title: _____

Date: _____